# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **ERNEST F. SPARKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:10-01030 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 15 and 16.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 5 and 6.)

The Plaintiff, Ernest F. Sparks (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on August 9, 2007 (protective filing date), alleging disability as of June 1, 2004, due to "ulcerated colitis, irregular heart, high blood pressure, [and] depression." (Tr. at 11, 126-30, 131-33, 152, 173.) The claims were denied initially and upon reconsideration. (Tr. at 74-76, 79-81, 88-90, 91-93.) On March 7, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 94-95.) The hearing was held on May 6, 2009, before the Honorable Karen B. Peters. (Tr. at 25-69.) By decision dated September 24, 2009, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-24.) The ALJ's decision became the final decision of the

Commissioner on June 24, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) On August 18, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2009). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2009). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of

      the Listings of Impairments.
          (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, June 1, 2004. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "status post colectomy with placement of ileostomy bag; heart murmur; hypertension; obesity; history of substance abuse; schizoaffective disorder; insomnia; and an anxiety disorder," which were severe impairments. (Tr. at 13-14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for a range of light exertional level work as follows:

> [T]he [C]laimant has the residual functional capacity to perform a range of light work (as defined in 20 CFR 404.1567(b) and 416.967(b)), subject to several nonexertional limitations. More specifically, the claimant would have to be careful in the type of items he is required to lift so that there is no interference with his ileostomy bag and he should not climb ladders or work at heights, but he can occasionally crouch, crawl, stoop, etc. The claimant also has a moderate reduction in concentration which limits him to simple, non-complex tasks in a situation where

> there is no production quota and in a job that does not require him to work directly with the general public; however, the claimant can be in the same area as the general public and other persons.

(Tr. at 17, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform work as an office cleaner and an inspector, at the light level of exertion. (Tr. at 23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 24 Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on October 30, 1971, and was 37 years old at the time of the administrative hearing, May 6, 2009. (Tr. at 22, 29, 126, 131.) Claimant had a high school education and was able to communicate in English. (Tr. at 23, 30, 172, 178-79.) In the past, he worked as a substitute janitor in the school system, tire technician, lumber stacker, material handler, and stock clerk and maintenance clerk. (Tr. at 22, 65, 164-72, 173-75.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing his residual functional capacity ("RFC"). (Document No. 15 at 8-13.) Claimant first asserts that the ALJ erred in ignoring the opinions of two state agency reviewing consultants, Drs. Egnor and Lim, as their opinions were the only evidence of record regarding Claimant's physical limitations. (Id. at 8.) Specifically, they were the only ones who opined that Claimant should avoid concentrated exposure to cold, vibration, and hazards. (Id.) In response, the Commissioner essentially asserts that any error that the ALJ may have committed is harmless because Claimant has failed to demonstrate the error by the ALJ's action. (Document No. 16 at 9.) The Commissioner notes that the jobs identified by the VE, an office cleaner and an inspector, do not involve exposure to cold, vibration, or hazards. (Id. at 9.) Thus, the Commissioner asserts that the outcome would have been the same regardless of whether the ALJ included the state agency physicians' environmental limitations in her RFC or hypothetical questioning. (Id.)

Second, Claimant asserts that the ALJ erred in assessing his mental RFC. (Document No. 15 at 9-13.) Specifically, Claimant asserts that the evidence from Dr. Rago, Ms. Jarrell, Southern Highlands, FNP Shinall, and Dr. Robertson, demonstrate that Claimant was more mentally restricted than assessed by the ALJ. (Id.) She notes that the ALJ gave significant weight to the opinions of the state agency psychologists although they did not have access to "much of the evidence." (Id. at 12.) In response, the Commissioner asserts that Claimant's allegation revolves around Claimant's credibility and the ALJ's resulting RFC. (Document No. 16 at 7-9.) Claimant testified that he withheld information regarding his past drug addiction and participation at the methadone clinic, from treating providers, and therefore, changed the outcome of his treatment and diagnoses. (Id.) Such withholding of information directly affected his credibility and the ALJ properly considered the same in his credibility assessment. (Id.) The Commissioner states that Claimant misled Drs. Robertson and Horsford, among others, which undermined his credibility and made the physicians' reports unreliable for determining whether Claimant was disabled. (Id. at 8.) The Commissioner further asserts that the ALJ's reliance on the reports of Ms. Jarrell and the state agency psychologists was reasonable because they understood his history of addiction yet found only mild to moderate limitations. (Id.) Accordingly, the Commissioner contends that the ALJ assessed Claimant's credibility in accordance with controlling rulings and regulations and that his finding was supported by substantial evidence of record. (Id.)

Analysis.

1. Environmental Limitations.

Claimant first alleges that the ALJ erred in ignoring the opinions of Drs. Egnor and Lim, two state agency reviewing consultants, who were the only physicians to assess environmental

limitations of avoiding concentrated exposure to cold, vibrations, and hazards. (Document No. 15 at 8-9.) The Court agrees with the Commissioner and finds that any error the ALJ may have committed is harmless. The Commissioner sets forth two jobs as identified in the Dictionary of Occupational Titles ("DOT"), that are reflective of the jobs identified by the VE. Those jobs are DOT occupational numbers 709.687-038 and 323.687-014. These jobs do not require exposure to extreme cold, vibrations, or hazards. Consequently, the Court finds that the ALJ, through the VE, identified jobs that Claimant could perform that did not involve the environmental limitations of cold, vibration, and hazards, as assessed by Drs. Egnor and Lim. Any error therefore, that the ALJ may have committed in failing to acknowledge these environmental limitations is harmless.

2. RFC Assessment.

Claimant next alleges that the ALJ erred in assessing her mental RFC. (Document No. 15 at 9-12.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2009). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the

9

claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

In assessing Claimant's RFC, the ALJ undertook a credibility analysis of Claimant, which focused on his withholding of certain information from his medical providers. (Tr. at 16-22.) Specifically, the ALJ noted that Claimant had a longstanding problem with an addiction to painkillers. (Tr. at 16.) Claimant testified that he had bought painkillers on the street for approximately ten years. (Id.) He eventually went to rehabilitation, though he did not want to discuss his addiction with his mother, teacher, or anyone. (Id.) Claimant subsequently entered in the methadone program approximately two years prior to the ALJ's decision. (Id.) As part of the program, Claimant was required physically to visit the center daily to receive his methadone. (Id.) Claimant testified that he did not advise any treating physician or psychiatrist that he was in the methadone program. (Id.)

The ALJ assessed a mental RFC that limited Claimant to performing simple, non-complex tasks in a situation where there was no production quota or direct work with the public. (Tr. at 17.) The ALJ determined however, that Claimant could work in the same area as the general public and other persons. (Id.) Claimant asserts that the mental evidence of record demonstrates that he was more mentally restricted than assessed by the ALJ.

The evidence of record reveals that in November, 2007, Teresa Jarrell noted that on mental status exam, Claimant was mildly anxious, with a restricted affect and limited eye contact. (Tr. at 19, 255-62.) She opined that Claimant's recent memory and concentration were moderately deficient and his remote memory was severely deficient. (Tr. at 19, 258.) She diagnosed major depressive disorder, recurrent, severe, with psychotic features; panic disorder without agoraphobia; and

generalized anxiety disorder. (Tr. at 19, 259.) She opined that Claimant's social functioning was moderately deficient, as was his concentration, but that his persistence and pace were only mildly deficient. (Tr. at 19, 260.)

On February 12, 2008, Dr. Rosemary L. Smith, Psy.D., opined that Claimant was moderately limited in his ability to maintain social functioning, concentration, persistence, or pace; and mildly limited in activities of daily living. (Tr. at 20, 301-14.) She also assessed moderate limitations in the categories of understanding and memory, sustained concentration and persistence, and social interaction. (Tr. at 20, 315-18.) She did not assess any limitations beyond the moderate category. (Id.)

On March 10, 2008, Dr. Horsford from Southern Highlands Community Mental Health Center, assessed a GAF of 40,[2] which was indicative of serious symptoms. (Tr. at 19-20, 327-31.) On March 25, 2008, Claimant attempted to establish a primary care provider with FNP Schnall, to whom he reported problems, *inter alia*, with depression, anxiety, and schizophrenia. (Tr. at 20, 339-41.) Claimant gave inaccurate information to FNP Schnall regarding him having been prescribed Xanax in the past, and therefore, FNP Schnall gave Claimant Klonopin until he could see a psychiatrist. (Id.) Claimant underwent a psychiatric evaluation with Dr. Robertson, M.S., on April 2, 2009. (Tr. at 20, 356-58.) Claimant failed to report his history of substance abuse to Dr. Robertson, but did advise that he was treated with Xanax two years earlier. (Id.) On exam, Dr. Robertson noted a mildly depressed mood, constricted affect, and fair judgment and insight. (Tr. at

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 31-40 indicates that the person has some impairment in reality testing or communication or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

20, 357.) Dr. Robertson diagnosed schizoaffective disorder, depressed; and anxiety disorder, NOS versus generalized anxiety disorder. (Id.)

The ALJ gave significant weight to the opinions of the state agency mental consultative examiner, but little weight to the GAF assessment of Dr. Horsford as it was based on Claimant's subjective allegations because he did not exhibit any significant difficulties of abnormalities during the mental status exam. (Tr. at 20.) The ALJ then assessed Claimant's credibility and noted that he provided inconsistent information regarding how long he had been clean from his prescription pain medication addiction, why he was referred to the methadone clinic and the length of his treatment (because medical records were not provided), his failure to report his methadone treatment to his treating providers, and his responses while testifying were evasive and vague. (Tr. at 22.) The ALJ also noted Claimant's reports that his medication for the most part was effective. (Id.)

The Court finds that the ALJ's decision regarding Claimant's mental impairments and the weight he accorded the various consultants, is supported by substantial evidence. The Commissioner correctly emphasizes that the ALJ's focus was on Claimant's credibility regarding his past prescription pain medication addiction and his failure to advise medical providers of that fact and of the fact that he was in the methadone program. Claimant advised Ms. Jarrell of the problems and the state agency reviewing consultants were aware of them, too. These medical sources assessed essentially only mild limitations, or restrictions consistent with the ALJ's RFC assessment. The bulk of the remaining medical sources were unaware of the problem, which as the Commissioner noted, caused the ALJ to have been more suspect of the overall strength of their opinions because they were deprived certain information. Accordingly, based on the foregoing, the Court finds that the ALJ's RFC and credibility assessments are supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 15.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 16.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2012.

R. Clarke VanDervort
United States Magistrate Judge